IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DARREN T. HARRIS,

          Petitioner,

    v.

BRIAN BELLEQUE,

         Respondent.

Civil No. 07-466-BR

OPINION AND ORDER

**TONIA L. MORO**
Assistant Federal Public Defender
15 Newtown Street
Medford, OR  97501

      Attorney for Petitioner

**JOHN R. KROGER**
Attorney General
**KRISTEN E. BOYD**
Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, OR  97301-4096

      Attorneys for Respondent

BROWN, Judge.

Petitioner brings this habeas corpus action pursuant to 28 U.S.C. § 2254.  For the reasons that follow, the Amended Petition for Writ of Habeas Corpus (#15) is **DENIED**.

## BACKGROUND

On July 13, 2000, a Crook County grand jury indicted Petitioner on six charges:  (1) Assault in the Second Degree ("Assault II"); (2) Failure to Perform Duties of a Driver; (3) Driving Under the Influence of Intoxicants ("DUII"); (4) Reckless Driving; (5) Misdemeanor Driving While Suspended; and (6) Initiating a False Report.  The charges arose out of a single-car collision on July 6, 2000.

The case was tried to a jury.  At trial, Lucinda Toomey and Tina Long testified that they met Petitioner the night of July 6, 2000, at a bar and restaurant in Prineville.  Toomey and Long went to the bar at about 11:30 p.m., after attending horse races earlier in the evening.  They both drank beers at the horse races, and later at the bar.

Petitioner spoke with Toomey and Long at the bar.  Toomey could not tell whether Petitioner had been drinking.  Long, a former bartender, thought Petitioner was drunk.  She saw him drink one alcoholic beverage and thought the bartender cut him off when he wanted a second one.  The bartender thought Petitioner consumed

two to five beers over a five-hour period that night.  The bartender, however, did not believe Petitioner was under the influence and did not recall cutting him off.

Toomey and Long left the restaurant and spoke with Petitioner in the parking lot.  Although Toomey could not remember the conversation, she recalled she got into Petitioner's car and that they were going to drive to a 7-11 store and then to Long's house.  Long thought they were going to Petitioner's home, which he had told her was a block and a half away from the bar.  Long followed Petitioner and Toomey to the 7-11 where Long and Toomey purchased cigarettes.

Toomey got back into Petitioner's car and, when they left the 7-11, Toomey told Petitioner how to get to Long's house.  Petitioner began to drive at a high rate of speed.  Toomey warned him to slow down because there were often police patrolling the road.  Petitioner turned on to another road which was dark and did not have any street lights or paint markings.  Nonetheless, Petitioner began speeding again.  Toomey warned Petitioner of an upcoming corner.  Petitioner disregarded the warning, and when the car reached the corner, it nosedived and rolled twice.  Toomey estimated Petitioner was driving 60-80 miles an hour at the time.

Petitioner's car left skid marks from the beginning of the corner to the edge of the road and down off of the bank.  It

landed on its top in the middle of a field about 100 to 120 feet from the edge of the pavement.

Howard Austin, who lived nearby, heard the crash. He went to the scene with his two roommates. There he saw the car flipped on its top. Someone helped Toomey out of the car, and Austin drove her to the hospital. Austin testified he did not get a good look at Petitioner that night; but, when he left for the hospital, three other people were still there. Austin waited at the hospital for a while because he heard the driver of the vehicle was on his way.

Petitioner, however, did not go to the hospital. Instead one of Austin's roommates gave him a ride to the house of Petitioner's girlfriend. There Petitioner called the police and reported his car stolen. Petitioner's girlfriend testified she did not believe he was intoxicated.

Petitioner left his girlfriend's house before the officer investigating the stolen car report arrived. The officer then went to Petitioner's house, where he saw someone walking around in the back of the house, but no one answered his repeated knocks at the door.

Officers finally contacted Petitioner the next day at his aunt's house. When confronted about lying about the car being stolen, Petitioner did not deny it. Petitioner nodded his head "yes" after the officer told him he believed Petitioner was

driving the "stolen" vehicle while intoxicated, was then involved in the collision, and then fled the scene because he was scared of the consequences.  When the officer asked Petitioner how much he had to drink, Petitioner said "enough."  The officer interpreted "enough" to mean more than enough to drive.

At the close of the state's case, Petitioner's trial attorney moved for a judgment of acquittal.  He argued there was insufficient evidence to convict on the DUII and Assault II charges.  His argument was based on the fact that, to prove extreme indifference to the value of human life, an element of assault in the second degree, the state had to prove both erratic driving *and* intoxication.  Because counsel contended there was insufficient evidence of driving under the influence, counsel argued there was insufficient evidence of "extreme indifference." The trial judge, however, denied the motion.

Although Petitioner did not testify, his attorney called three witnesses, including the bartender at the bar where Petitioner met Toomey and Long.  All three stated that, when they saw Petitioner the afternoon and evening of the collision, they did not observe any conduct that suggested he was intoxicated. Petitioner stipulated through counsel that his license was suspended two days before the accident.

With the agreement of the parties, the trial judge gave the jury a special instruction defining the "extreme indifference" element as follows:

> Extreme indifference to the value of human life means a state of mind where the individual cares little about the risk of death of a human being, for example, speeding, swerving, running red lights, driving on the wrong side of the road and other such erratic driving coupled with impairment of driving ability caused by intoxication.

The trial judge also instructed the jury as to a lesser included offense of Assault in the Third Degree, an offense that does not require a finding of extreme indifference to the value of human life. The court's instruction on driving while under the influence of intoxicants included the following:

> "Under the influence of intoxicating liquor" means that the defendant's physical or mental faculties were adversely affected by the use of intoxicating liquor to a noticeable or perceptible degree. Under the influence of intoxicating liquor includes not only the well-known, easily recognized conditions and degrees of intoxication, but also any abnormal mental or physical condition that results from consuming intoxicating liquor and that deprives that person of that clearness of intellect or control that the person would otherwise possess.

Prior to reaching a verdict, the jury had several questions for the court, including whether they needed to reach agreement on the DUII charge before they considered the Assault II charge. Although the jury acquitted Petitioner of Driving Under the Influence, the jury found him guilty of the remaining charges.

6 - OPINION AND ORDER -

After the jury reported its verdict in court, Petitioner's trial attorney asked the trial judge not to excuse the jury immediately.  Counsel then asked the judge to require the jury to reconsider its verdict pursuant to Or. Rev. Stat. § 136.480, which allows a court to so direct the jury if the court finds the jury made an error of law.  Counsel argued the verdicts were inconsistent and that the jury could not have found intoxication sufficient to support the Assault II charge if they found Petitioner was not driving under the influence.  The court denied the motion.

Petitioner filed a direct appeal.  The only error raised on appeal was the trial court's failure to direct the jury to reconsider its allegedly inconsistent verdict.  The Oregon Court of Appeals affirmed without opinion and the Oregon Supreme Court denied review.  *State v. Harris*, 186 Or. App. 136, 63 P.3d 55, *rev. denied*, 335 Or. 479, P.3d 76 (2003).

Petitioner then sought state post-conviction relief ("PCR").  Following an evidentiary hearing, the PCR trial judge denied relief.  On appeal, Petitioner's attorney submitted a *Balfour* brief.[1]  Petitioner's Section B raised all grounds alleged in his

---

[1] Upon concluding that only frivolous issues exist on appeal, a *Balfour* brief allows appointed counsel to meet constitutional requirement of "active advocacy" without violating rules of professional conduct.  Section A, signed by counsel, contains a statement of the case, including a statement of facts, sufficient to apprise the court of the jurisdictional basis for the appeal,

PCR petition.    The Oregon Court of Appeals affirmed without opinion.  *Harris v. Belleque*, 207 Or. App. 767, 143 P.3d 570 (2006).  Petitioner filed a Petition for Review with the Oregon Supreme Court, again raising all of the claims alleged in his PCR petition.  The Oregon Supreme Court denied review.  *Harris v. Belleque*, 342 Or. 116, 149 P.3d 138 (2006).

On March 28, 2007, Petitioner file his habeas corpus action in this Court.  Counsel was appointed, and on August 21, 2007, Petitioner's Amended Petition for Writ of Habeas Corpus was filed. In it, Petitioner alleges five grounds for relief:

> **Ground One**: Petitioner was denied rights guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution when trial counsel failed to argue to the jury the legal standard for finding extreme indifference to human life necessary to convict for vehicular Assault in the Second Degree and that Petitioner's actions after the accident could not be used to infer his state of mind before the accident.
> **Supporting Facts:** Trial counsel failed to argue that speeding alone without other misconduct such as intoxication, crossing over centerline, running red light, does not constitute extreme indifference to the value of human life which is a required element of Assault in the Second Degree. Counsel failed to argue before the jury that Petitioner's actions after the accident (leaving the scene) couldn't be attributed to his state of mind prior to the time of the accident.

---

but contains no assignments of error or argument.  Section B, signed only by the appellant, is a presentation of the issues that appellant seeks to raise but that counsel considers to be frivolous.  *Balfour v. State of Oregon*, 311 Or. 434, 451-52, 814 P.2d 1069 (1991).

**Ground Two:**  Petitioner was denied rights guaranteed by the Sixth and Fourteenth Amendment of the United States Constitution when trial counsel failed to effectively challenge the sufficiency of the evidence of the Assault in the Second Degree prosecution and conviction.

**Supporting Facts:**  Trial counsel failed to sufficiently object to the prosecution and conviction because in order to find Petitioner guilty of Assault in the Second Degree by driving under the circumstances as charged, the jury had to find that Petitioner drove while intoxicated.  There was insufficient evidence for the jury to make that finding and, in fact, the jury specifically found that Petitioner was not intoxicated when it acquitted him of the DUII charge.  Petitioner's fear of being arrested for driving while suspended after the accident was insufficient to prove the requisite indifference prior to the time of the accident.

**Ground Three:**  Petitioner was denied rights guaranteed by the Sixth and Fourteenth Amendment of the United States Constitution when appellate counsel failed to assign error to the trial court's denial of the motions for judgment of acquittal and alternative motion for mistrial and failed to effectively assign error to the trial court's denial of a motion for directed verdict.

**Supporting Facts:**  Appellate counsel failed to assign error to the trial court's findings and denial of Petitioner's motion for a judgment of acquittal on the charge of Assault in the Second Degree due to a lack of evidence sufficient to prove the charge beyond a reasonable doubt.  Appellate counsel failed to argue the United States Constitutional basis for relief on the assignment of error presented seeking reversal of the trial court's denial of Oregon's process for obtaining a directed verdict.

**Ground Four:**  Petitioner was denied trial rights guaranteed by the Fifth, Sixth and Fourteenth Amendments of the United States Constitution when we was convicted upon insufficient proof.

**Supporting Facts:**  Petitioner was denied Due Process when he was convicted of Assault in the Second Degree based upon evidence insufficient to prove the offense beyond a reasonable doubt.  Petitioner was denied Due Process when the Oregon Courts failed to apply Oregon

law requiring the jury to reconsider its inconsistent
verdict.

**Ground Five:** Petitioner was denied rights guaranteed by
the Eighth and Fourteenth Amendments of the United
States Constitution.
**Supporting Facts:** Imposition of consecutive sentences
violated state law. In addition, the 95-month sentence
was disproportionate, excessive and cruel and unusual.
The trial court should have imposed a concurrent
sentence to the 70 months that was imposed for Assault
in the Second Degree and not 25 months consecutive for
Failure to Perform the Duties of a Driver Involving
Injury to a Person, and should not have imposed a 13
year driver's license suspension.

In his Memorandum in Support of Petition for Writ of Habeas
Corpus, Petitioner does not address the claims alleged in Grounds
Four and Five; instead, he "proceeds on his ineffective assistance
of counsel claims stated in grounds one, two and three."

Respondent argues relief should be denied on the claims
alleged in Grounds Four and Five because Petitioner failed to
address them in his Memorandum, thereby waiving them. In
addition, Respondent contends, in any event, that Petitioner
procedurally defaulted those claims as well as the claim alleged
in Ground Two. Finally, insofar as Petitioner presented his
claims to the Oregon state courts, Respondent asserts the state
court decisions denying relief are entitled to deference, and
habeas corpus relief cannot be granted in this Court.

## DISCUSSION

**I.  Procedural Default**

A.    **Legal Standards**

Generally, a state prisoner must exhaust all available state court remedies either on direct appeal or through collateral proceedings before a federal court may consider granting habeas corpus relief. 28 U.S.C. § 2254(b)(1).  A state prisoner satisfies the exhaustion requirement by fairly presenting his claim to the appropriate state courts at all appellate stages afforded under state law. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004); *Casey v. Moore*, 386 F.3d 896, 915-16 (9th Cir. 2004), *cert. denied*, 545 U.S. 1146 (2005); *Gatlin v. Madding*, 189 F.3d 882, 888 (9th Cir. 1999).

When a state prisoner fails to exhaust his federal claims in state court, and the state court would now find the claims barred under applicable state rules, the federal claims are procedurally defaulted. *Casey*, 386 F.3d at 920; *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1 (1991).  Similarly, if a federal constitutional claim is expressly rejected by a state court on the basis of a state procedural rule that is independent of the federal question and adequate to support the judgment, the claim is procedurally defaulted. *Coleman*, 501 U.S. at 729-30; *Bennett v. Mueller*, 322 F.3d 573, 580 (9th Cir.), *cert. denied*, 540 U.S. 938 (2003).

In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and

adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or can demonstrate that the failure to consider the claims will result in a miscarriage of justice. *Coleman*, 501 U.S. at 729; *Noltie v. Peterson*, 9 F.3d 802, 804-05 (9th Cir. 1993).

**B.    Analysis**

**1.    Ground Two**

In his Amended Petition for Post-Conviction Relief, Petitioner alleged trial counsel was constitutionally ineffective in two respects, because he:

1. Failed to properly argue before the jury that speeding alone, without other misconduct such as intoxication, crossing over the centerline or running a red light, does not constitute "extreme indifference to the value of human life," which is a required element of ORS 163.175(1)(C), Assault in the second degree.

2. Failed to properly argue before the jury that Petitioner's action's [sic] after the accident (leaving the scene) could not be attributed to Petitioner's state of mind prior to or at the time of the accident. Petitioner's fear of being arrested for driving while suspended after the accident, did not equate to "extreme indifference to the value of human life," prior to or at the time of the accident.

Resp. Exh. 110, p. 3.

In Ground Two of his Amended Petition before this Court, Petitioner alleges trial counsel was ineffective because he failed to "effectively challenge the sufficiency of the evidence of the Assault in the Second Degree prosecution and conviction."  This differs from the claims alleged in the PCR Petition.  Petitioner goes on to allege, however, as supporting facts, that his "fear of being arrested for driving while suspended after the accident was insufficient to prove the requisite indifference prior to the time of the accident," language identical to that included in Ground Two of his PCR Petition.  Moreover, as discussed more fully below, the PCR trial judge clearly considered the issue and specifically found trial counsel adequately argued all of the issues Petitioner believed he should have argued.  As such, Petitioner did not procedurally default the claim alleged in Ground Two.

### 2.  Grounds Four and Five

Respondent argues Petitioner cannot obtain relief on the claims alleged in Grounds Four and Five because he submitted no argument in his Memorandum in Support on the basis that he waived those claims.  Certainly, this Court would prefer that appointed counsel address all claims alleged, particularly where appointed counsel filed the Amended Petition containing those claims.  The Court does not agree, however, that counsel's failure to do so automatically results in a waiver.

District Judge Marsh of this court addressed this issue
in *Elkins v. Belleque*, CV 06-1180-MA:

> Respondent relies upon 28 U.S.C. § 2248 which
> provides that the allegations of a return to a habeas
> petition, or an answer to an order to show cause, "if
> not traversed, shall be accepted as true except to the
> extent that the judge finds from the evidence that they
> are not true."
>
> However, the Advisory Committee Notes to Rule 5 of
> the Rules Governing Section 2254 Proceedings, provides
> that a traverse is no longer contemplated "except under
> special circumstances", and that the common law
> assumption of verity of the allegations of a return
> until impeached, as codified in 28 U.S.C. § 2248, is no
> longer applicable." Advisory Committee Note to Rule 5,
> 28 foll. § 2254 (1976) (citing *Stewart v. Overholser*,
> 186 F.2d 339, 343 n. 5 (D.C.Cir. 1950)).  In light of
> the foregoing, and in the absence of any case law
> supporting respondent's position that the failure to
> furnish legal argument in support of habeas claims
> renders the claims abandoned, I decline to find the
> claims not traversed to be waived or subject to denial
> on that basis alone."

Opinion and Order (#35) at 5-6.

This Court finds Judge Marsh's reasoning persuasive and,
consequently, rejects Respondent's assertion that Petitioner has
waived the grounds for relief not specifically addressed in his
Memorandum in Support.  However, having undertaken a review of the
those claims, the court concludes habeas corpus relief is not
warranted because they are procedurally defaulted.

Both Ground Four and Five allege trial error claims,
which were not included in Petitioner's direct appeal.  While
Petitioner did allege them in his PCR petition, the PCR trial

judge found them procedurally barred.  Petitioner presents no evidence or argument that the procedural default should be excused.  Accordingly, Petitioner is not entitled to relief on the claims alleged in Grounds Four and Five.

## II.  Relief on the Merits

### A.  Legal Standards

Under 28 U.S.C. § 2254(e)(1), as amended by the Antiterrorism and Effective Death Penalty Act of 1996, habeas corpus relief may not be granted on any claim that was adjudicated on the merits in state court, unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court's determination of a factual issue "shall be presumed to be correct."  28 U.S.C. § 2254(e)(1).  Petitioner carries the burden of rebutting this presumption of correctness by clear and convincing evidence.  *Id*.

A state court decision is not considered "contrary to" established Supreme Court precedent unless it "applies a rule that contradicts the governing law set forth in [Supreme Court cases]" or "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at

15 – OPINION AND ORDER –

a result different from [Supreme Court] precedent." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003).  A federal habeas court cannot overturn a state decision "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams v. Taylor*, 529 U.S. 362, 409 (2000).

A state court decision can be overturned for legal error only if the state court's application of Supreme Court case law was "objectively unreasonable." *Penry v. Johnson*, 532 U.S. 782, 793 (2001).  Federal courts "may not second-guess a state court's fact-finding process unless, after review of the state-court record, it determines that the state court was not merely wrong, but actually unreasonable." *Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir.), *cert. denied*, 543 U.S. 1038 (2004).

**B.  Analysis**

Petitioner alleges both trial and appellate counsel provided constitutionally ineffective assistance of counsel in violation of his rights under the Sixth and Fourteenth Amendments.  In order to prevail on his claim of ineffective assistance of counsel, Petitioner must show both (1) that his attorney's performance fell below an objective standard of reasonableness; and (2) that the performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  The first part of this test requires a

showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. While this burden is not insurmountable, there is a strong presumption that counsel's conduct falls within "the wide range of reasonable professional assistance." *Id*. at 689.

To establish the second prong of the *Strickland* test, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In determining whether a defendant was prejudiced by ineffective assistance of counsel, the court should examine whether the "'result of the proceeding was fundamentally unfair or unreliable.'" *United States v. Palomba*, 31 F.3d 1456, 1460-61 (9th Cir. 1994) (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 368 (1993)).

### 1.   Trial Counsel

Petitioner alleges trial counsel provided constitutionally ineffective assistance of counsel in two respects: (1) by failing to sufficiently argue the legal standard for finding extreme indifference to human life; and (2) by failing to effectively challenge the sufficiency of the evidence of Assault in the Second Degree. The PCR trial judge considered

these claims, and in light of the trial record and the evidence
presented in the PCR proceeding, entered the following Findings of
Fact and Conclusions of Law:

### FINDINGS OF FACT

1.  Petitioner was originally charged with:  Assault
    II; Failure to Perform the Duties of a Driver;
    Driving Under the Influence of Intoxicants;
    Reckless Driving; Driving while Suspended; and
    Initiating a False Report.  After a jury trial he
    was convicted of all charges except the DUII
    charge.

2.  Petitioner received adequate and effective
    assistance of trial counsel, Jeff Wilson.

3.  Trial counsel was not inadequate for failing to
    argue to the jury that speeding alone with other
    misconduct such as intoxication, crossing over the
    centerline or running a red light, did not
    constitute extreme indifference to the value of
    human life.

4.  Trial counsel requested Uniform Criminal Jury
    Instruction No. 1404, which defines Assault in the
    Second Degree.  Trial counsel also requested a
    Special Jury Instruction defining the element of
    extreme indifference to the value of human life
    which recited the law as stated in *State v. Boone*,
    294 Or. 630 (1983) and *State v. Corpus*, 49 Or. App.
    811 (1980) and which also added the following
    language:

    > Extreme indifference to the value
    > of human life means a state of mind
    > or an individual cares little about
    > the risk of death of a human being.
    > For example, speeding, swerving,
    > running red lights, driving on the
    > wrong side of the road, and other
    > erratic driving coupled with
    > impairment to driving ability
    > caused by intoxication.

The court agreed to instruct the jury with that special instruction.

5.  Trial counsel adequately argued the issues petitioner believes trial counsel should have argued. Trial counsel also made a motion to have the jury reconsider its verdict on the basis of inconsistent verdicts when the jury returned a verdict of guilty on the Assault II but not guilty on the DUII.

6.  Trial counsel was not inadequate for failing to argue before the jury that petitioner's actions after the accident could not be attributed to petitioner's state of mind prior to or at the time of the accident. Trial counsel did not want to open the door to defendant's prior bad acts which included a DUII crash that killed petitioner's passenger due to petitioner's reckless driving during that incident. Instead trial counsel effectively cross-examined witnesses in such a way that would allow him to argue that petitioner never fled the scene. Trial counsel's decision was the result of reasonable professional skill and judgment.

* * *

**CONCLUSIONS OF LAW**

1.  Based on the findings of fact set forth above, in the underlying criminal proceedings resulting in petitioner's conviction, petitioner was not denied the right to assistance of counsel, as guaranteed by either the United States Constitution and as articulated by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), or the Constitution of the State of Oregon.

Resp. Exh. 119, pp. 2-4.

This Court agrees with the PCR trial judge. Trial counsel argued the correct legal standard to the jury and provided appropriate jury instructions pertaining to the element of

"extreme indifference to human life" required to establish Assault in the Second Degree.    Moreover, counsel made a reasonable strategic decision not to "open the door" to Petitioner's prior bad acts by challenging the prosecutor's argument that petitioner's actions after leaving the scene of the accident could not be attributed to his state of mind prior to or at the time of the accident.    Instead, counsel effectively cross-examined prosecution witnesses and argued Petitioner never fled the scene of the accident.    Finally, counsel did repeatedly challenge the sufficiency of the evidence to support the Assault in the Second Degree conviction by moving for a judgment of acquittal, addressing the issue at length in his closing statement, and by asking the judge to require the jury to reconsider the verdict.

Ultimately, for Petitioner to obtain habeas relief, the state PCR court's decision "must have been more than incorrect or erroneous." *Wiggins v. Smith*, 539 U.S. 510 520 (2003) (internal quotations omitted).    "The state court's application [of federal law] must have been 'objectively unreasonable.'"    *Id*. at 520-21 (internal quotations omitted).    Taking the facts in the record as a whole, Petitioner has not demonstrated that trial counsel's argument to the jury on the legal standard for finding extreme indifference to human life or that trial counsel's challenges to

the sufficiency of the evidence were objectively unreasonable.[2] Accordingly, the PCR court's conclusion that trial counsel did not render ineffective assistance of counsel is neither contrary to, or an unreasonable application of, clearly established federal law and Petitioner is not entitled to habeas relief.

### 2.   Appellate Counsel

Petitioner alleges appellate counsel provided constitutionally ineffective assistance because he failed to assign error to the trial court's denial of the motions for acquittal and alternative motion for mistrial, and failed to effectively assign error to the trial court's denial of a motion for directed verdict. To prevail, Petitioner must establish that appellate counsel's performance fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's unprofessional errors, Petitioner would have prevailed on direct appeal. *Smith*, 528 U.S. at 285.

The PCR trial judge rejected Petitioner's claim against appellate counsel:

### FINDINGS OF FACT

---

[2] Having found counsel's performance was not deficient, this court need not address prejudice. *See Strickland*, 466 U.S. at 697 (noting that courts may consider either prong of the test first and need not address both if the petitioner fails one).

* * *

7.  Petitioner received adequate assistance of appellate counsel, David Celuch.

8.  The two issues petitioner believes appellate counsel should have raised in his brief would not have been meritorious issues for appeal. Appellate counsel's affidavit (Def's Ex. 102) credibly depicts the reasoning of David Celuch which was the result of reasonable professional skill and judgment. Appellate counsel used his professional skill and judgment to winnow out the frivolous claims that petitioner claims should have been

     raised so as not to dilute the merit of the claim he did raise, that:  "the trial court erred by refusing to explain to the jury that it had made a mistake of law and it should reconsider its verdict as allowed by ORS 136.480."

**CONCLUSIONS OF LAW**

* * *

2.  Based on the findings of fact set forth above, in the direct appeal from the underlying criminal proceedings resulting petitioner's conviction, petitioner was not denied the right to assistance of counsel, as guaranteed by either the United States Constitution and as articulated by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), or the Constitution of the State of Oregon.

Resp. Exh. 119, pp. 8-9.

This decision was not contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court. It is not unreasonable or unprofessional for appellate counsel to not raise on appeal every colorable or

nonfrivolous issue.  *Jones v. Barnes*, 463 U.S. 745, 754 (1983). Rather, the "process of winnowing out weaker claims on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quotation omitted).  As such, Petitioner cannot prevail in this Court on his ineffective assistance of appellate counsel claim.

<u>**CONCLUSION**</u>

For these reasons, the Court **DENIES** the Amended Petition for Writ of Habeas Corpus (#15) and **DISMISSES** this action.

IT IS SO ORDERED.

DATED this 10th day of July, 2009.


    /s/ Anna J. Brown
ANNA J. BROWN
United States District Judge


23 - OPINION AND ORDER -                     P:\Brown-LawClerks\07-466harris0709opinion.wpd